(20 Misc. Rep. 378.)

### MERZ v. INTERIOR CONDUIT & INSULATION CO. et al.

(Supreme Court, Special Term, New York County. May, 1897.)

1. CORPORATIONS—RIGHTS OF STOCKHOLDERS—DEBENTURE BONDS.
    A stockholder in a corporation cannot be required to take debenture bonds issued by it, or to surrender any part of his holdings of stock in payment therefor.

2. SAME—INJUNCTION—DAMAGES—PLEADING.
    In an action by a stockholder in a corporation to restrain the issue of bonds, in which an injunction against their issue is granted, damages cannot, at the same time, be awarded for the issue of the bonds, though it is alleged in an amended complaint, and qualifiedly admitted by the answer, that some such bonds have been issued during the pendency of the action.

3. AMENDED COMPLAINT—SUPPLEMENTAL PLEADINGS.
    An amended complaint speaks of the period at and prior to the issue of the summons, and, in order to review and have relief for or against action taken during the pendency of the suit, leave must be obtained to serve supplemental pleadings.

Action by Franz Merz against the Interior Conduit & Insulation Company and others to restrain the issue of debenture bonds and the reduction of capital stock. Judgment for plaintiff.

Dittenhoefer, Gerber & James, for plaintiff.
Eaton & Lewis, for defendants.

RUSSELL, J. The plaintiff, as a minority stockholder, brings action to restrain the defendant company and its directors from issuing debenture bonds to the amount of $500,000, upon the plan of having them taken by the stockholders to the amount of 40 per cent. of their holdings of capital stock, and pay for such subscriptions, one-half in capital stock at par, $12\frac{1}{2}$ per cent. in dividend scrip, at par or cash, and $37\frac{1}{2}$ per cent. in cash, the subscription to be made on or before the 1st day of April, 1895, and the balance of such debenture bonds presumably to provide for liabilities of the company not discharged by the resources from the stockholders' subscriptions to the bonds. This resolution of the directors was adopted March 22, 1895, and contained also a request to the stockholders to return to the transfer agent their certificate of stock, for the purpose of surrender, in order to receive new certificates for 80 per cent. of their then holdings, and an additional certificate of interest in the surplus capital of the company.

It is claimed by the company and the directors that the capital stock of the company, three days before this meeting of the directors, had been lawfully reduced from $1,575,000 to $1,000,000 by the stockholders, at a lawful meeting called for that purpose. It is apparent that the reduction of the stock and the issue of the debenture bonds were designed for the purpose of defraying pressing liabilities, then, perhaps, more onerous on account of the financial depression, and to raise also a fund in cash for the operations of the company in the carrying on of its legitimate business. These efforts were the result of a previous attempt to accomplish the same purpose by an increase of capital stock alone, and the issue of preferred stock; but which, not meeting the assent of the stockholders of a sufficient amount, became abortive, and hence the adoption of the other plan. A preliminary injunction was granted by Justice Beekman, restraining the issue of the bonds and the canceling the certificates of the stock holdings of the plaintiff, or reducing the same to 80 per cent., or interfering with the stock holdings, such injunction order containing a provision requiring the defendants to show cause why it should not be continued during the pendency of the litigation. The hearing of the continuance motion was had before Justice Beach, who denied the motion for an injunction, and vacated the order to show cause, with the qualification that the plaintiff should not be called upon to surrender any part of his stock, or subscribe for debenture bonds. An appeal was taken to the general term (34 N. Y. Supp. 215) by both parties; the defendants appealing from the modification, and the plaintiff from the denial of the injunction as to the other matters asked for. By the opinion of the general term, written by Justice Follett,

and concurred in by Presiding Justice Van Brunt, it was decided that the issue of the bonds for the payment of scrip dividend, the reduction of stock of the corporation, and to raise the balance only in cash, was not a compliance with sections 23 and 42 of the stock corporation law, which require the issue of bonds for money, labor, or property, and the injunction was, therefore, restored, and continued during the pendency of the action.    Justice O'Brien, also sitting upon the appeal, dissented in a carefully reasoned opinion sustaining the issue of the bonds, except that the plaintiff should not be required to surrender any portion of his stock for retirement.    An appeal was taken to the court of appeals (45 N. E. 1133) by the defendants, but the merits of the injunction were not there considered, and the appeal was dismissed.

On the present trial of the issues of the action the same facts appear, substantially, as were displayed to the courts upon the arguments for and against the preliminary injunction.    It is therefore plain that the law of the case as announced by the general term in the prevailing opinion requires a continuance in the final judgment of the injunction to the extent determined by the legal principles settled by the appellate court.

There are many matters set forth in the pleadings in regard to the conduct and management of this company, its connection with the standardizing company, and the president, Johnson, which are not directly involved in the determination of this action, and the merits of which were not tried upon the facts; so that care must be taken to confine the decision here to the legal wrong displayed by the evidence, without embarrassing the directors in the legitimate conduct of the affairs of the company.    Upon them rests the burden of managing its affairs, chosen, as they are, by the majority of the stockholders, and the court will refrain from attempting to substitute its discretion for their wisdom and responsibility, so far as it is possible to do so.    The judgment will therefore restrain the defendants from the issue of the debenture bonds to the amount of $500,000, or any part thereof, as being illegal in the plan of their inception.

I am asked also to enjoin the defendants from attempting to reduce the stock holdings of the plaintiff.    I regard the resolutions of March 22, 1895, in regard to the reduction of the stock holdings to 80 per cent., and the proposition to take a part of the stock in payment of subscriptions to the bonds, as inviting, in effect, what is, legally speaking, a voluntary action, not compellable or obligatory upon the stockholders, and not even in terrorem with the adjudication of the legal character of the bonds so to be issued.    There are proper methods for the reduction of the stock, and from the view, so far as it is displayed in this action, of the measures taken for the reduction of the stock, I am not prepared to say that the capital stock was not lawfully reduced from $1,575,000 to $1,000,000.    It must be remembered that that reduction was the result of a stockholders' meeting of entirely different and independent legal authority from any directors' meeting, and that the resolution for the issue of the debenture bonds was by action of the directors at a meeting subsequently held.    The injunction as to the reduction of stock, therefore, must

be limited to an inhibition against any interference with the stock of the plaintiff as an incident to, or in connection with, the proposed issue of the debenture bonds.

The additional relief asked for by the plaintiff in the proposed judgment submitted and in his brief is for damages against the defendants for the issue of the bonds. The request is that the court shall presume that the bonds are outstanding, and that they have been issued for value without corresponding benefit, and that the plaintiff, suing in form on behalf of all the stockholders, is entitled to judgment for the presumptive damages sustained. It is strongly maintained by the defendants that there are no bonds issued or outstanding, and it would be hazardous justice to award a money judgment of such magnitude upon the incidental presumptions afforded by the pleadings and the documents in a case tried to determine other issues. But that issue is not properly solvable here. The whole scope and foundation of the complaint, even in its amended form, is to prevent a threatened wrong in the proposed issue of the bonds, and the proposed reduction of the plaintiff's stock. The effort of the plaintiff has been all through to obtain an injunction against such anticipated injury. It would be an anomaly to award such an injunction as the main relief, and also full damages resulting from the consummated act which the injunction was asked for to prevent. Again, the sole ground upon which the court might determine the fact as to the issue of the bonds is derived from an allegation in the amended complaint, and a qualified admission by the answer to it. After the hearing of the motion for the injunction, an amended complaint was served, in which it was incidentally stated, upon information and belief, that the defendants, after the denial of the injunction by Justice Beach, in order to take advantage of the occasion, before the injunction could be restored by appeal, had issued the bonds to some extent, but to what extent was unknown to the plaintiff. That allegation was not directly admitted by the answer, but the affirmative averment was made that the bonds had been issued for the legitimate purposes of the company. It will be thus seen that, to determine the responsibility and liability upon the pleadings, it will be necessary to determine how many of the bonds had been issued and were outstanding, and also to what purpose they had been devoted, upon which investigation it might appear that they had been received for proper purposes for money, labor, or liabilities previously lawfully accruing. It must also be remembered that this action is in no sense placed by the pleadings in a position to try the lawfulness of events occurring during the two years of the pendency of the litigation. An amended complaint, like an original complaint, speaks of the period at and prior to the service of the summons. In order to review and have relief for or against action taken during the pendency of the suit, application must be made, and leave had from the court, to serve supplemental pleadings, which perform a very different office from that of simply amended pleadings. Code Civ. Proc. § 544; Holyoke v. Adams, 59 N. Y. 233. It would be a very wide stretch of judicial power to award heavy damages against the defendants for events occurring during the litigation, suggested simply by an amended com-

plaint, where the scope of the action is purely to prevent a threatened injury. Judgment is directed for the plaintiff, as herein indicated, with costs. Ordered accordingly.